YOLANDA ANDERSON, et al.,         *       **CIVIL ACTION**

**VERSUS**                         *       **NO. 06-3298**

**ALPHONSO JACKSON, ET AL.**      *       **SECTION "B" (5)**

## ORDER AND REASONS

Before the Court are the following motions: (1) HUD's Motion to Dismiss (Rec. Doc. No. 45); (2) HANO's Motion to Dismiss or Alternatively for Summary Judgment (Rec. Doc. No. 60); (3) HUD's Motion for Reconsideration (Rec. Doc. No. 27); (4) Plaintiffs' Cross-motion for Partial Summary Judgment (Rec. Doc. Nos. 87 & 90); (5) Plaintiffs' Motion for Preliminary Injunction (Rec. Doc. No. 21). For the following reasons,

**IT IS ORDERED** that:

(1)      HUD's Motion to Dismiss (Rec. Doc. No. 45) is **DENIED** in part and **GRANTED** in part.

(2)      HANO's Motion to Dismiss or Alternatively for Summary Judgment (Rec. Doc. No. 60) is **DENIED** in part and **GRANTED** in part.

(3)      HUD's Motion for Reconsideration (Rec. Doc. No. 27) is **DENIED** as moot.

(4)      Plaintiffs' Cross-Motion for Partial Summary Judgment (Rec. Doc. Nos. 87 & 90) is **DENIED**.

(5)      Plaintiffs' Motion for Preliminary Injunction (Rec. Doc. No. 21) is **DENIED.**

### Background

Plaintiffs lived in public housing developments in New Orleans that were damaged by Hurricane Katrina. Since Katrina hit, most of the plaintiffs have lived elsewhere. In June 2006 Plaintiffs filed this suit, contending that the Department of Housing and Urban Development ("HUD") and its Secretary have approved, in violation of the U.S. Housing Act of 1937, a request

by the Housing Authority of New Orleans ("HANO") to demolish the developments in which they formerly lived.  In the alternative, Plaintiffs contend that by not performing the minor repairs they claim are all that is necessary to make their housing developments habitable again, the defendants have constructively demolished the developments.  According to plaintiffs, by these acts the defendants have (1) violated the U.S. Housing Act, Title VIII of the Civil Rights Act of 1964, international law, and the $5_{th}$ and $14_{th}$ Amendments to the Constitution; and (2) breached contracts with Plaintiffs.  Six weeks later Plaintiffs filed a motion for a preliminary injunction, and the following week, on August 17, 2006, Plaintiffs moved for an evidentiary hearing on the PI motion, as well as for expedited discovery.  The Court later issued an order setting an evidentiary hearing for October 5, 2006.  The hearing and oral argument on the contested motions was continued to October 25, 2006, at 9:00 am.

Following oral argument, the Court ordered the parties to submit supplemental memoranda addressing the Supreme Court decision in *Gonzaga University v. Doe*, 536 U.S. 273, 122 S.Ct. 2268 (U.S. 2002).  A teleconference was held with this Court on Thursday, November 2, at 3:30 p.m. Subsequently, the Court ordered the parties to submit a joint report to the Court immediately following the public hearings scheduled to be held on November 29, 2006 and December 7, 2006. Thereafter, the Court held several settlement conferences with counsel of record, parties, and party representatives.

**Law and Analysis**

I.    <u>HUD's Motion to Dismiss 12(b)(1) and 12(b)(6) (Rec. Doc. No. 45) and HANO's Motion to Dismiss or, Alternatively, for Summary Judgement (Rec. Doc. No. 60)</u>

    A. STANDARD OF REVIEW

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, [i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . . Fed. R. Civ. P. 12(c).[1]  Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the non-movant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Associates of North Texas,* 139 F.3d 532, 536 (5th Cir. 1998).  The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.  *Id.*  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter.*, Inc., 7 F.3d 1203, 1207 (5th Cir. 1993).

B. FAIR HOUSING ACT § 3608 and U.S. HOUSING ACT § 1437p (COUNTS 3&4)

1. § 3608 of the Fair Housing Act

a. Claims against HUD

§ 3608 of the FHA, provides that HUD "*shall*" administer "programs and activities relating

---

[1]In the present case, numerous affidavits have been presented to the Court concerning matters outside of the pleadings; therefore, all pending motions to dismiss will be treated as motions for summary judgment and viewed under the appropriate standard.

to housing and urban development in a manner affirmatively to further the policies" of the FHA. 42 U.S.C. § 3608(e)(5).  HUD asserts that Plaintiffs' claims under § 3608 are not subject to judicial review under the APA because the APA does not permit review of agency actions that are "'committed to agency discretion by law.'"  *See* Rec. Doc. No. 45 at 22 citing 5 U.S.C. § 701(a). However, numerous courts have exercised subject matter jurisdiction over claims brought against HUD under § 3608.  *See, e.g., Dean v. Martinez*, 336 F. Supp. 2d 477, 487 (D. Md. 2004); *Jaimes v. Toledo Metro. Hous. Auth.*, 715 F. Supp. 835, 839 (N.D. Ohio 1989); *Suffolk Hous. Servs. v. Town of Islip*, No. 82-2882, 1987 WL 14131, at * 2-4 (E.D.N.Y. July 14, 1987).

The cases upon which HUD relies to claim that § 3608 does not provide for judicial review are factually dissimilar from the present action.  For example, in *Americans Disabled For Attendant Programs Today v. HUD*, 170 F.3d 381 (3d Cir. 1999), the Third Circuit held that the APA precluded judicial review of the plaintiff's § 3608 claim, because the claims would require the court to undertake a broad based review of *general agency policies regarding investigation and enforcement, rather than a focused review of specific agency decisions*.  *Id.* at 388-89 (emphasis added).  *ADAPT* recognized that the First Circuit's decision in *NAACP* supported the availability of judicial review when claims challenge "specific examples of HUD's failure to enforce Title VII requirements."  *Id.* at 388 (citing *NAACP*, 817 F.2d at 154-55).  In this case, Plaintiffs challenge the propriety of specific examples of conduct, namely HUD's plan to demolish the units and its failure to repair and reopen the units.  Therefore, judicial review is proper.[2]

       b. Claims Against HANO

---

[2]HUD does not raise any jurisdictional challenges under § 3608 relating to *Gonzaga* in its supplemental memorandum (Rec. Doc. 111) or memorandum in response to Plaintiffs' October 27, 2006 supplemental memorandum (Rec. Doc. No. 117).  However, as discussed below, any such challenges would fail.

A federal statute creates a private right of action enforceable through § 1983 only when that law "manifests an 'unambiguous' intent to confer individual rights." *Gonzaga University v. Doe*, 536 U.S. 273, 280 (2002).  Prior to *Gonzaga,* courts examined three factors to determine whether Congress intended to create rights enforceable by private parties:  "First, Congress must have intended that the provision in question benefit the plaintiff.  Second, . . . the right is not so 'vague and amorphous' that its enforcement would strain judicial competence.  Third, the statute must unambiguously impose a binding obligation on the States [or other state actor]." *Banks v. Dallas Housing Authority,* 271 F.3d 605, 609 (5th Cir. 2001) (citing *Blessing v. Freestone*, 520 U.S. 329, 340-41, 117 S. Ct. 1353, 1359 (U.S. 1997).  Since *Gonzaga*, the Fifth Circuit continues to apply the *Blessing* test to determine whether or not Congress intended to confer a private right of action to enforce a particular statute, but now recognizes that *Gonzaga* has severely limited the finding of private rights of action under most federal statutes.  *Johnson v. Housing Authority of Jefferson Parish*, 442 F.3d 356, 360 (5th Cir. 2006) (citing *Blessing*, 520 U.S. at 329).  In addition, following the lead of *Gonzaga*, the Fifth Circuit applies a fourth factor:  "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Id.* at 365-66 (citing *Middlesex County Sewage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S. Ct. 2615, 69 L.Ed.2d 435 (1981).

Prior to *Gonzaga*, numerous courts held that § 3608 meets the first prong of the *Blessing* test. *See, e.g., Langlois*, 234 F. Supp. 2d at 72 (finding that "this provision was intended to benefit . . . people in desperate need of access to fair housing, minorities and the poor").  In addition, courts held that § 3608 fulfills the second prong.  *See id.* (noting that the duty to affirmatively further fair housing is not "too vague and amorphous for the courts to enforce"); *NAACP*, 817 F.2d at 154

(commenting that "a statute that instructs an agency 'affirmatively to further' a national policy of nondiscrimination would seem to impose an obligation to do more than simply not discriminate itself"). Finally, several courts held that § 3608 imposes binding obligations on state agencies and, therefore, meets the third prong of the *Banks* test. *See, e.g., Otero v New York City Hous. Auth.*, 484 F.2d 1122, 1133-34 (2d Cir. 1973) (finding that "the affirmative duty placed on . . . HUD by § 3608[e](5)" extends also to "other agencies administering federally assisted housing programs"); *Langlois v. Abington Hous. Auth.*, 234 F. Supp. 33, 73 (D. Mass. 2002) (declining to "construe the boundary of the duty to affirmatively further fair housing as ending with [HUD]"); *Reese v. Miami-Dade County*, 210 F. Supp.2d 1324, 1329 (S.D. Fla. 2002) (finding that "the duty to 'affirmatively' further fair housing imposes a binding obligation upon the states").

Since *Gonzaga*, at least one court holds that § 3608 fulfills all prongs of the *Blessing* test, thereby creating a private right of action, and cites pre-*Gonzaga* cases with approval. For example, in *Wallace v. Chicago Housing Authority*, the court held that a class of public housing residents could maintain suit under § 1983 to combat a violation of § 3608(e)(5) of the FHA. 298 F.Supp.2d 710, 719 (N.D. Ill. 2003). The court distinguished *Gonzaga*, reasoning that "the [FERPA] statute at issue in *Gonzaga* was enacted pursuant to Congress's spending power, whereas the [FHA] is a civil rights statute concerned with remedying past housing discrimination." *Id.* at 718. The court noted that the difference "is significant . . . because there is far less reason to infer a private remedy in favor of individual persons if Congress . . . had written [the statute] simply as a ban on discriminatory conduct by recipients of federal funds or as a disbursement of public funds to educational institutions engaged in discriminatory practices." *Id.* Further, the court reasoned that while the FERPA provisions at issue in *Gonzaga* "only speak in terms of 'institutional policy and

practice,'" the FHA's clear aim is to "'confer individual rights upon a class of beneficiaries.'" *Id.* at 718-19.

In addition, *Wallace* relies on *Otero* in holding that § 3608 is equally enforceable against local housing authorities as it is against HUD. *Id.* at 719. Moreover, *Wallace* relies on *Langlois* in holding that § 3608 easily passes the *Blessing* test. The court reasoned that "there is little dispute that the language of the act is mandatory; nor can . . . a claim under the [FHA] strain[] judicial competence." *Id.* Finally, with respect to the first prong, the court noted that "'[i]t could not be clearer from the statute, the legislative history, and the case law construing it, that § 3608(e)(5) was intended to benefit the plaintiffs here: people in desperate need of access to fair housing, minorities and the poor.'" *Id.* at 719 (citing *Langlois*, 324 F.Supp.2d at 72). Therefore, because Plaintiffs' § 3608 claims are enforceable against HUD <u>and</u> HANO, they can maintain a private right of action.[3] In addition, genuine issues of material fact remain disputed as to whether Defendants failed to affirmatively further fair housing. Thus, summary judgment is improper.

2. § 1437p of the U.S. Housing Act

(1) Constructive Demolition

In *Gonzaga University v. Doe*, the Supreme Court held that a student could not maintain a suit for damages under 42 U.S.C. § 1983 to enforce provisions of the Family Educational Rights and Privacy Act of 1974 ("FERPA") because the relevant provisions did not create personal rights that were enforceable against state actors under § 1983. 536 U.S. 273, 276 (2002). The Court mandated that a federal statute must unambiguously confer rights to support a cause of action brought under

---

[3] Plaintiffs' § 3608 claims against HANO <u>and</u> HUD are much more viable than their *constructive demolition* claims under § 1437p, which rest entirely upon statutory interpretation. This is evidenced somewhat by the fact that HUD does not even address the § 3608 claims in their supplemental memorandum (Rec. Doc. 111) or memorandum in response to Plaintiffs' October 27, 2006 supplemental memorandum (Rec. Doc. No. 117).

§ 1983.  *Id.*  "[I]t is *rights*, not the broader or vaguer 'benefits' or 'interests' that may be enforced under the authority of that section."  *Id.* at 283.  Because *Gonzaga* involved a claim under § 1983, its holding does not directly relate to Plaintiffs' claims against Defendants Alphonso Jackson, Secretary of HUD, and HUD itself.  Nevertheless, *Gonzaga* is relevant as to Plaintiffs claims brought directly against HUD under § 1437p because the Court explained that the inquiry as to whether a statutory violation can be enforced under § 1983 and the inquiry involved in determining whether a private right of action can be implied from a particular statute "overlap in one meaningful respect—in either case we must "first determine whether Congress *intended to create a federal right*."  *Id.* at 283.  However, in addition, "even where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*."[4]  *Id.* (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).

Plaintiffs' argue that § 1437p(d) implies a private cause of action for their constructive demolition claims.  However, the cases upon which Plaintiffs rely (Rec. Doc. No. 78 at 28-31) interpreted a section of the statute that has since been removed by a 1998 amendment.[5]  Since 1998, the 5th Circuit has rejected a plaintiff's ability to bring a private cause of action under similar sections of § 1437.  For example, in *Banks v. Dallas Housing Authority*, the Fifth Circuit held that a separate provision of the Housing Act, 42 U.S.C. § 1437f(e), did not include a private right of

---

[4]In cases where a plaintiff is suing under § 1983, a private remedy is presumed.  *Gonzaga*, 536 U.S. at 284.

[5]Prior to the 1998 amendment removing § 1437p(d), it read as follows: "A public housing agency shall not take any action to demolish or dispose of a public housing project or a portion of a public housing project without obtaining the approval of the Secretary and satisfying the conditions specified in subsections (a) and (b) of this section."

action.  *Banks*,  271 F.3d. at 610 n.3.  The court cited approvingly to *Edwards v. District of Columbia*, 821 F.2d 651 (D.C. Cir. 1987), which held that § 1437p does not create an enforceable right against constructive demolition where the public housing authority has arguably failed to "maintain the project in a decent, safe, and sanitary condition."  The *Edwards* court reasoned that, at most, § 1437p(d) "created only the right to a lease, the terms of which would be enforceable under general principles of contract and property law."

In addition, in *Morial v. HUD*, the court noted that "[b]ased on the recent Fifth Circuit opinion in [Banks], the individual tenants . . . [did] not have standing to sue under 42 U.S.C. § 1437 because there is no implied right of action for tenants under the sections of 42 U.S.C. § 1437 that impose conditions upon the receipt of government monies for housing purposes." 2002 WL 246334, at *2 (E.D. La. 2002).[6]

In contrast, in March 2006, the Fifth Circuit in *Johnson v. Housing Authority of Jefferson Parish* applied *Gonzaga* to § 1437(o)(2) of the U.S. Housing Act and held that Congress intended to grant to voucher program recipients, federal *rights* enforceable under § 1983.[7]  442 F.3d at 367. In *Johnson*, the court relied heavily on *Wright v. City of Roanoke Redevelopment & Housing*

---

[6]As further evidence that tenants do not have an implied right of action to sue under the sections of 42 U.S.C. § 1437, the Court notes the recent publication in the Federal Register of revised demolition regulations implementing § 1437p of the U.S. Housing Act.  The revision states:

Former section 18(d) of the 1937 Act was removed.  That section provided that a PHA could not "take any action" to demolish a public housing project, or portion of a project, without HUD approval.  Similar language in 24 CFR 970.7(a) and 970.25(a) is designed to make certain that HUD can track units being phased out for funding purposes.  That language is not intended to create any private right of action.

Demolition or Disposition of Public Housing Projects, 71 Fed. reg. 62354 (October 24, 2006).

[7]§ 1437(o)(2) reads as follows:  Any excess housing costs above a limit referred to as the ''payment standard,'' which is established by HUD and based on fair market value, are borne by the participant.  In that situation the family's contribution would be greater than 30 percent of adjusted income, which the voucher program permits at the participant's option.  § 1437f(*o*)(2)(B).

*Authority*, a pre-*Gonzaga* Supreme Court case, to reach its conclusion.  In *Wright*, the Court held

that a provision of the U.S. Housing Act, which was virtually identical to the one at issue in

*Johnson*, clearly "gave low-income tenants an enforceable right" and that the "intent to benefit

tenants is undeniable."  479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987).  Although *Wright*

predates *Gonzaga*, the *Johnson*  court noted that "*Gonzaga* expressly relied on *Wright,* pointing to

it as a paradigmatic example of an appropriate case for finding the presence of a private right of

action under § 1983 and leaving no doubt that *Wright* survives as good law."  *Johnson*, 442 F.3d at

360.  Moreover, the court noted that because "*Wright* predated *Blessing* by a decade the Court could

not have applied the '*Blessing* test' under that name, yet the Court's analysis in *Wright* is wholly

consistent with that employed in more recent cases, and indeed constitutes an indispensable element

of the current methodology."  *Id.*

In addition, the court distinguished its prior decision in *Banks*, in which the court held that

§ 1437f(e)[8] did not create a right enforceable under § 1983.  *Id.* at 366-67 (citing *Banks*, 271 F.3d

at 605).  The court noted that "*Banks* is helpful . . . only as a reference point along the continuum

of decisions concerning § 1983 enforcement of asserted federal statutory rights."  *Id.* at 367  ("The

obvious differences between the statutory provision considered in *Banks* and the one at issue here

plainly put *Banks* at the opposite end of the spectrum, indeed very near *Gonzaga*.").  The court

reasoned that the *Banks* statute, requiring owners to maintain their properties "as a condition of their

receipt of funds, is easily distinguishable"  from a statute providing "'monthly assistance payment

for the family.'"  *Id.*

---

[8] § 1437f(e) authorized HUD to ''make assistance payments . . . pursuant to a contract with owners . . .  who agree to upgrade housing so as to make and keep such housing *decent, safe, and sanitary* . . . .  42 U.S.C. § 1437f(e) (1990).

Ultimately, to resolve whether § 1437p creates *rights* enforceable via a private cause of action requires the Court to examine the statutory text and determine if it reads more like rights/benefits-granting language (as Plaintiffs claim) or more like "institutional policy and practice" language (as Defendants claim).[9]  Upon review, the Court finds the statute at issue to be more akin to the statutory text presented to the Fifth Circuit Court in *Banks* and to the Supreme Court in *Gonzaga*.  Like the statutes at issue in *Banks* and *Gonzaga*, § 1437p concerns itself primarily with addressing general principles of housing policy and regulating the agencies that implement those principles.[10]

The Court recognizes that § 1437p contains a multitude of provisions that, when read standing alone, could reasonably be interpreted as rights/benefits-granting language because they are "phrased in terms of persons benefitted."[11]  However, when read in context, it is clear that these provisions are intended to regulate the public housing agency and ensure that it has fulfilled basic requirements before HUD is authorized to approve any demolition application.  Unlike the statutes at issue in *Wright* and *Johnson*, § 1437p does not focus on the rights of individual residents and families.[12]  Therefore, § 1437p does not unambiguously confer rights on the plaintiffs, and they cannot maintain a private cause of action under that particular law.  Defendants motions for

---

[9]Rec. Doc. Nos. 113 at 2-3, 116 at 2.

[10]Unlike the statutes at issue in *Banks* and *Gonzaga*, § 1437p does not primarily concern itself with the distribution of funds.  However, neither case suggests that, upon reviewing the text of a particular statutory provision, this is a prerequisite for finding that the Congress did not intend to create a private right of action.

[11]For example, § 1437p creates tenants "rights" in conjunction with the demolition of public housing, including: the right to notice, the right to relocation, the right to comparable housing which may include tenant-based assistance, the right to receive payment for relocation expenses, and the right to counseling for displaced residents.

[12]It does not create a "'monthly assistance payment *for the family*,' including a reasonable utility allowance, [which is] obviously a tangible government benefit that is directly focused on the family and its income." *Johnson*, 442 F.3d at 367.

summary judgment are granted as to Plaintiffs' constructive demolition claims under § 1437p.

(2) Actual Demolition

Defendants assert that Plaintiffs lack standing to assert their actual demolition claims, and that these must be dismissed as unripe.  To prove standing, Plaintiffs need to show that (1) they have suffered an injury in fact; (2) that the injury was caused by the Defendants' conduct; and (3) that there is a likelihood that the requested relief will redress that injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To establish that they have suffered an injury in fact, Plaintiffs must show that they have suffered an injury that is (a) concrete and particularized, and (b) actual or imminent.  *Id.* at 560.

Before actual demolition of the housing developments at issue may begin, HANO must apply to HUD for permission to demolish them.  42 U.S.C. § 1437p.  But HUD cannot approve any application until HANO certifies that it has complied with the many requirements imposed by 42 U.S.C. § 1437 p(a).  For example, HANO must certify, among other things, that "the project or portion of the public housing project is obsolete as to physical condition, location, or other factors, making it unsuitable for housing purposes."  § 1437 p(a)(1)(A)(I).  In addition, HUD must disapprove the application if it was not developed in consultation with the residents who will be affected, resident councils, and local government officials.  § 1437 p(b)(2)(A)-©).  Finally, HUD must deny any such application if HANO's certification is inconsistent with other information available to it.  § 1437 p(b)(1).

Plaintiffs assert that "Defendants' repeated announcements and actions demonstrate the imminence of demolition . . . ."  (Rec. Doc. No. 78 at 22).  For example, they offer evidence that HUD announced in June 2006 that it would demolish roughly 5,000 public housing units in New

Orleans.[13]  Moreover, they assert that Scott Keller, deputy chief of staff for HUD Secretary Jackson, confirmed HUD's demolition plans at a  city council meeting.  (Rec. Doc. No. 78 at 22).  Finally, Plaintiffs claim that Defendants' own representations to the Court suggest that demolition is imminent.  *See Id.* (citing Rec. Doc. No. 45 at 8) (recognizing that "HUD expects that HANO will apply for such approval [of demolition of the public housing developments] at some time in the future").

To support their claim for actual demolition, Plaintiffs rely heavily on *Cabrini-Green Local Advisory Council v. Chicago Hous. Auth.*, No. 96 C 6949, 1997 WL 31002 (N.D. Ill. Jan. 22, 1997), for the proposition that an actual demolition claim can be ripe for judicial review absent the submission to and subsequent approval by HUD of a redevelopment plan.  There are, however, numerous factual inconsistencies between those presented to the court in *Cabrini-Green* and the case before this Court.  First, *Cabrini-Green* held that the Plaintiffs had standing to pursue a claim for constructive demolition, not actual demolition.  *Id.* at *5.  More importantly, in *Cabrini-Green*, the Chicago Housing Authority ("CHA") had submitted—and HUD had approved—two demolition applications for portions of the housing development at issue, as well as a grant application calling for the demolition of portions of the development.  *Id.* at *1-2.  In addition, CHA had consulted with the City of Chicago and it had approved the second phase of demolition at issue.  *Id.* at *2.

The Court, however, finds the present situation to be more analogous to the one presented to the court in *Edwards v. District of Columbia*, 628 F. Supp. 333, (D.D.C. 1985), *aff'd*, 821 F.2d

---

[13]Danae Columbus, *HUD Agrees to Reopen 1,000 Public Housing Units By Early Fall*, June 16, 2006, *available at* http://www.neworleanscitycouncil.com/shownews.asp?cid=55.

651 (D.C. Cir. 1987).  In *Edwards*, the Court held that although the local housing authority had already submitted allegedly inadequate demolition applications to HUD for approval, Plaintiffs' claims were not ripe for judicial review because HUD did not take "final action" on the pending applications.  *Id.* at 338.  Unlike the situation in *Edwards*, HANO has not submitted any application to HUD for approval.  Moreover, if HANO does apply, it must still comply with the requirements set forth in 42 U.S.C. § 1437p before HUD can approve the application.  Therefore, Plaintiffs cannot show that an injury is imminent.  Their actual demolition claims against HUD *and* HANO must be dismissed for lack of standing and as unripe; Defendants' motions for summary judgment are granted.

### C. DISPARATE IMPACT and DISPARATE TREATMENT (COUNTS 1 & 2)

The FHA makes it unlawful to "make unavailable or deny" housing "because of race," or to "discriminate against any person in the terms, conditions, or privileges" of rental housing or "in the provision of services . . . in connection therewith."  42 U.S.C. § 3604(a), (b).  Prohibited actions under § 3604(b) include "failing or delaying maintenance or repairs" of rental property.  24 C.F.R. § 100.65(b)(2).  Plaintiffs may establish a violation of the FHA by proof of a discriminatory effect (disparate impact) or a discriminatory intent (disparate treatment).  *Sims v. First Gibralter Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996).  Any person who claims to have been injured by a discriminatory housing practice may bring suit in an appropriate United States district.  42 U.S.C. § 3613.

To state a claim of disparate treatment under §§ 3604(a) and (b) of the FHA, Plaintiffs must allege that Defendants made unavailable or denied them housing on the basis of race, and discriminated against them in the terms, conditions, or privileges of rental housing because of race.

14

42 U.S.C. §§ 3604(a), (b).  To show discriminatory intent, a plaintiff must show that "race was a consideration and played some role in the decision at issue."  *Hanson v. The Veterans Administration*, 800 F.2d 1381, 1386 (5th Cir. 1986).  A plaintiff may prove such intent with either direct or indirect evidence.  *Texas v. Crest Asset Mgmt., Inc.*, 85 F. Supp. 2d 722, 728 (S.D. Tex. 2000).

Simply put, Plaintiffs claim that Defendants planned to demolish four of New Orleans' largest public housing developments and refused to repair or reopen reparable units with the intent to rid New Orleans of some of its poor, African-American residents.  Complaint at ¶¶ 85, 88, 105.  The only piece of direct evidence of discriminatory intent offered by Plaintiffs is Defendant Secretary Alphonso Jackson's remark that New Orleans "is not going to be as black as it was for a long time, if ever again."  Cmplt. at ¶¶ 6, 7, 70.  This statement, in another plausible context, could be a simple observation of the effects that Hurricane Katrina had on the entire African-American population of New Orleans.

In addition, Plaintiffs offer statements of other public officials, who are not in any way related to the present litigation, as circumstantial evidence of intent.   For example, New Orleans City Council President Oliver Thomas stated that "[w]e don't need soap opera watchers all day."  *See* Cmplt., at ¶¶ 8, 71.  Similarly, Louisiana Congressman Richard Baker remarked that "[w]e finally cleaned up public housing in New Orleans.  We couldn't do it, but God did."  *See* Cmplt., at ¶¶ 8, 71.  Although these comments may reveal the true feelings of their speakers, non-parties to this action, they do not evidence any racial motivation attributable to HUD or HANO in deciding to demolish the various units.  Plaintiffs have not offered sufficient facts to "create[] a reasonable inference that [race] was a determinative factor" in HUD or HANO's decision-making process.

15

*Sims*, 83 F.3d at 1556.

However, a violation of section 3604(a) can be established by a showing of discriminatory effect without a showing of discriminatory intent. *Metropolitan Housing Dev. Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977). A party may state a *prima facie* case of disparate impact by establishing either: (1) that the immediate effect of the housing decision had "a greater adverse impact on one racial group than on another," or (2) that the ultimate effect of the housing decision may be racially discriminatory because it tends to exclude minorities. *Id.* In the present case, Plaintiffs have proved neither.

"Ordinarily, a prima facie disparate impact case requires a showing of a substantial statistical disparity between protected and non-protected [individuals]." *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002). The basis of this cause of action is that a single policy "has different effects upon protected and unprotected classes." *Bryant Woods Inn v. Howard County*, 911 F. Supp. 918, 939 (D. Md. 1996). "[W]here only one group or class of persons is affected by a particular decision, there is no disparity in treatment between groups and no 'disparate impact.'" *Id.*

Plaintiffs have failed to offer any evidence that the proposed plan to demolish certain developments has caused any statistical disparity between the African-American residents and non-protected individuals.[14] Instead, Plaintiffs assert that because <u>100%</u> of the residents are African-American, the decision to demolish necessarily has a discriminatory effect, as the adverse impact

---

[14]Plaintiffs offer evidence that residents of the Biloxi, Mississippi public housing developments, roughly half of which are caucasian, "have received markedly better treatment, with HUD guaranteeing replacement" on a "'one-to-one basis.'" (Rec. Doc. No. 87 at 19). However, the decision to return Biloxi tenants to their units is separate from the decision to demolish certain developments in New Orleans. The focus must be on how a single policy, rule, or decision adversely affects protected individuals. The Court cannot rely upon comparisons between the Biloxi recovery effort and the situation in New Orleans when these two cities experienced different forms of devastation, and the expedited return of Biloxi tenants may be more feasible for numerous reasons not addressed by Plaintiffs.

of Defendants' actions falls more heavily on minorities than on non-minorities. (Rec. Doc. No. 78 at 8). This, however, is not the law based on present assertions by Plaintiffs here.

In other cases, however, plaintiffs can sustain a claim for disparate impact under the FHA if the decision "perpetuates segregation and thereby prevents interracial association." *Metropolitan Housing Dev. Corp.*, 558 F.2d at 1290. In the present case, Plaintiffs offer no evidence to support their claim that the proposed demolition plans perpetuate segregation. HANO claims that its redevelopment plans include "the replacement of obsolete and distressed public housing with new mixed-income developments in order to revitalize and foster socio-economic integration . . . ." (Rec. Doc. No. 60 at 24). Ironically, it appears that Plaintiffs' efforts to return to developments that were populated entirely with African-Americans pre-Katrina may actually perpetuate segregation more so than HANO's plans for demolitions and redevelopment.

Plaintiffs have not offered relevant or material evidence to sustain a claim for disparate treatment or disparate impact under section 3604(a) of the FHA. Therefore, these claims are dismissed as to both defendants and their motions for summary judgment are granted.

D. CONSTRUCTIVE EVICTION (Count 5- HANO only)

Constructive eviction occurs when the leased premises are rendered uninhabitable because of an act or omission by the lessor. *Regency Motors of Metairie, L.L.C., et al. v. Hibernia-Rosenthal Ins. Agency, L.L.C.*, 868 So.2d 905, 909 (La. Ct. App. 5 Cir. 2004). A breach of a covenant to repair can constitute constructive eviction. *See Sewell v. Hukill*, 356 P.2d 39, 41-42 (Mont.1960). In this situation, the lessee can either dissolve the lease and sue for damages or make the necessary repairs and deduct the cost from the rent. *New Hope Gardens, Ltd. v. Lattin*, 530 So. 2d 1207, 1210 (La. App. 2 Cir. 1988).

17

HANO contends that Plaintiffs' constructive eviction claims must fail because the premises at issue were rendered uninhabitable by a fortuitous event, Hurricane Katrina, and not through any fault of the lessor.  (Rec. Doc. No. 82 at 18-19).  In contrast, Plaintiffs claim "that HANO's failure to repair their units following Katrina, and HANO's further actions in boarding and locking units thereby preventing Plaintiffs from making their own repairs, constitutes constructive eviction." (Rec. Doc. No. 78 at 37).

Whether Hurricane Katrina or HANO is ultimately responsible for the current state of disrepair is an issue to be decided by the trier of fact; therefore, summary judgment is premature. However, if Plaintiffs prevail on their constructive eviction claim, the appropriate remedy is to dissolve the lease and seek damages because making the repairs themselves is likely not feasible. In any event, a preliminary injunction is *not* the appropriate remedy.

E. BREACH OF CONTRACT (Count 6- HANO only)

The lease at issue provides that:

> HANO shall be responsible for repair of the unit within a reasonable period of time after receiving notice from Tenant. . . .   HANO shall offer Tenant a replacement dwelling unit, if available, ***if necessary repairs cannot be made within a reasonable time***. . . .  Tenant shall accept any replacement unit offered by HANO.
> *Lease § X(a)-©).*

Plaintiffs allege that *if* the units can be readily repaired, HANO must repair and permit Plaintiffs to return.  In contrast, HANO argues that, given the condition of New Orleans following Katrina, it could not make all necessary repairs within a period of time that it considered "reasonable."

Although Plaintiffs do not propose a definition of what is "a reasonable time" under the lease, their complaint alleges sufficient facts to state a claim for relief under the lease.  The issue of what is a reasonable time is one that must be decided by the trier of fact and cannot be resolved in

motion for summary judgment.  Because HUD is not a party to the contracts entered into between Plaintiffs and HANO, and Plaintiffs' breach of lease and constructive eviction claims rely on the Court's interpretation of the leases at issue, these claims are dismissed and summary judgment is granted as to HUD only.

F. CONSTITUTIONAL CLAIMS (COUNT 7)

1. Equal Protection

As explained above, Plaintiffs have failed to allege sufficient facts to sustain their claims that HUD and HANO's acts have had a  discriminatory effect, and that their decisions to demolish and redevelop were made with a discriminatory intent.  Therefore, Plaintiffs' claims of equal protection violations are dismissed and summary judgment is granted as to both defendants.

2. Due Process

HUD asserts that sovereign immunity prevents Plaintiffs from suing it for Constitutional violations.  However, 5 U.S.C. § 702 waives sovereign immunity in most suits seeking injunctive relief.[15]  In addition, although § 702 is codified as part of the APA, this waiver is not limited to suits under the APA, but applies to any suit, including Constitutional claims.  *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) (holding that sovereign immunity did not bar a claim under the Eighth Amendment); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996) (noting that "[t]he APA's waiver of sovereign immunity applies to any suit whether under

---

[15]5 U.S.C. § 702 provides, in relevant part, that:
> [a]n action . . . seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . .

5 U.S.C. § 702 (2007).

the APA or not").  Plaintiffs do not seek monetary damages from HUD, but are suing for injunctive relief.  Therefore, Plaintiffs can sue HUD for violations of due process.

HUD also asserts that Plaintiffs' due process claims must be dismissed for failure to state a cause of action.  To prevail on a procedural due process claim, Plaintiffs must prove that they have "asserted a recognized liberty or property interest" and were "intentionally or recklessly deprived of that interest, even temporarily," through Defendants' action without due process.  *See Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005).  The Supreme Court holds that public housing tenants have "a significant interest in property," namely in their "right to continued residence in their homes."  *Greene v. Lindsey*, 456 U.S. 444, 451 (1982).  In addition, mere lack of possession does not terminate a tenant's property interest in their leasehold.  *See Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir. 1994).  Thus, the Court recognizes that Plaintiffs do "have a recognized property interest in continued public housing assistance."  (Rec. Doc. No. 60 at 32).  But to determine the extant of Plaintiffs' entitlement, requires an examination of the terms of their leases with HANO.

HANO alleges that, according to the terms of the lease, it can transfer tenants to alternative housing with or without notice for variety of reasons.  For example, it may transfer tenants if the unit becomes hazardous to the health or safety of the tenant, or if it is necessary to demolish or rehabilitate the unit.  *See* Rec. Doc. No. 60 at Exh. A, Section X; *see also Id.* at Section VII©)(2).  Specifically, HANO asserts that, in the event of an emergency transfer such as the evacuation for Hurricane Katrina, tenants are not entitled to a hearing prior to or after the transfer.  *Id.* at Exh. B, p. 102.  However, it is unclear whether the units at issue still "pose an immediate threat to resident life, health, or safety" and, thus, whether it is necessary for the units to remain unoccupied for more than sixteen months following Hurricane Katrina.  *Id.*  Plaintiffs claim that a simple, cost-effective

"bio-wipe" is all that is needed to render many units habitable.  In contrast, Defendants claim that Plaintiffs far underestimate the extent of the damage, and that substantial time, effort, and money is required to render the affected units safe for occupancy.

Moreover, HANO asserts that Plaintiffs have not been deprived of their basic right to continued residence in public housing because they have received disaster assistance vouchers, which provide them with housing assistance indefinitely.  However, the Court takes judicial notice of the fact that, in post-Katrina New Orleans, rents have risen and affordable, habitable housing is scarce.  Plaintiffs argue that, as a result of this ongoing rise in rental prices, the vouchers provided are inadequate to provide for continued subsidized housing.  The vouchers, as explained to the Court by all parties, do not cover non-rental costs such as utilities, whereas such costs are covered if tenants are residing in public housing developments.

Therefore, viewing the facts in a light most favorable to the Plaintiffs, they have stated a claim upon which relief can be granted.  Moreover, the disputed factual issues presented before the Court preclude the granting of summary judgment.  Specifically, the Court requires further factual development on: (1) the number of units, if any, that are presently habitable; (2) the extent of the repairs required to render non-habitable units habitable; (3) the number of tenants who presently wish to return and are able to return; (4) the inadequacies of the current voucher program.

### G. INTERNATIONAL LAW CLAIMS (COUNT 8)

The Guiding Principles on Internal Displacement (GDIP) are not a treaty and "do not constitute a binding instrument."  *Francis Deng,* OCHA Online, GDIP, introductory comments ¶ 2.  The creators simply hoped "that they will be widely circulated and given practical application in the field."  *Id.* at ¶ 6.  As a result, the GDIP are not customary international law because states do

not "universally abide by it." *Flores v. Southern Peru Copper Corporation*, 414 F.3d 233, 248 (2nd Cir. 2003). To be customary international law "the principle[s] must be more than merely professed or aspirational." *Id.*

Plaintiffs assert that HUD and HANO have violated international law, specifically, Principle 28 of the GDIP. However, Plaintiffs do not have standing to assert their claims for violations of international law against HUD or HANO under the GDIP because the GDIP does not have the force of "law." Therefore, construing the facts in the light most favorable to the Plaintiffs, they have failed to state a claim upon which relief can be granted under the GDIP. Defendants' motions for summary judgment are granted.

II.    Plaintiffs' Cross-Motion for Summary Judgment (Rec. Doc. No. 90)

Plaintiffs move this Court to enter partial summary judgment as to liability in Plaintiffs' favor and against defendants C. Donald Babers, William C. Thorson, and the HANO with respect to the following claims: (1) violation of § 3604 of the Fair Housing Act for disparate impact (Count I); (2) violation of § 3608 of the Fair Housing Act (Count III); (3) violation of § 1437p of the U.S. Housing Act (Count IV); (4) constructive eviction (Count V); (5) breach of lease (Count VI); and (6) violation of Plaintiffs' due process rights (Count VII). As previously discussed, and as it pertains to Plaintiffs' disparate impact claim, found in Count 1, Plaintiffs' motion is **DENIED** as moot. As previously discussed, and as it pertains Plaintiffs' actual demolition *and* constructive demolition claims, found in Count 4, Plaintiffs' motion is **DENIED** as moot. As it pertains to all other counts listed in Plaintiffs' motion, numerous issues of disputed fact exist that preclude the granting of summary judgement. Therefore, Plaintiffs' motion is **DENIED**.

III.   HUD's Motion for Reconsideration (Rec. Doc. No. 27)

For the following reasons, Defendant's Motion to Reconsider the Court's August 21, 2006 Order granting Plaintiffs' Motion for an Evidentiary Hearing on their Motion for a Preliminary Injunction is **DENIED** as moot.  The Court held oral argument on Plaintiffs' Preliminary Injunction Motion on October 25, 2006.

IV.     Plaintiffs' Motion for Preliminary Injunction (Rec. Doc. No. 21)

For the reasons previously stated in open court at oral argument and for the foregoing reasons, Plaintiffs' motion is **DENIED.**  As per this order, the Court recognizes the need for further factual development, particularly as it relates to: (1) the number of units, if any, that are presently habitable; (2) the extent of the repairs required to render non-habitable units habitable; (3) the number of tenants who presently wish to return and are able to return; (4) and the inadequacies of the current voucher program.  Moreover, there exists an adequate remedy at law through which Plaintiffs' can pursue their claims.

For the foregoing reasons,

**IT IS ORDERED** that:

(1)     HUD's Motion to Dismiss (Rec. Doc. No. 45) is **DENIED** in part and **GRANTED** in part.  HUD's motion, as it pertains to Plaintiffs' disparate treatment *and* disparate impact claims, found in Counts 1, 2 and 7, is **GRANTED** because Plaintiffs have failed to introduce pertinent evidence of discriminatory treatment or impact.  As discussed above, and as it pertains to Plaintiffs' actual *and* constructive demolition claims found in Count 4 and Plaintiffs' international law claims found in Count 8, HUD's motion is **GRANTED**.  Additionally, HUD's  motion, as it pertains to Plaintiffs' constructive eviction and breach of lease claims found in Counts 5 and 6,

respectively, is **GRANTED**.  Finally, as discussed above, and as it pertains to all other counts not previously dismissed, HUD's motion is **DENIED** because genuine issues of material fact remain that must be decided at trial.

(2)     HANO's Motion to Dismiss or Alternatively for Summary Judgment (Rec. Doc. No. 60) is **DENIED** in part and **GRANTED** in part.  HANO's motion, as it pertains to Plaintiffs' disparate treatment *and* disparate impact claims, found in Counts 1, 2 and 7, is **GRANTED** because Plaintiffs have failed to introduce pertinent evidence of discriminatory treatment or impact.  As discussed above, and as it pertains to Plaintiffs' actual *and* constructive demolition claims found in Count 4 and Plaintiffs' international law claims found in Count 8, HANO's motion is **GRANTED**.  Finally, as discussed above, and as it pertains to all other counts not previously dismissed, HANO's motion is **DENIED** because genuine issues of material fact remain that must be decided at trial.

(3)     HUD's Motion for Reconsideration (Rec. Doc. No. 27) is **DENIED** as moot.

(4)     Plaintiffs' Cross-Motion for Partial Summary Judgment (Rec. Doc. Nos. 87 & 90) is **DENIED**.

(5)     Plaintiffs' Motion for Preliminary Injunction (Rec. Doc. No. 21) is **DENIED.**

New Orleans, Louisiana, this 6th day of February, 2007.

IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE

24