UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

YOLANDA ANDERSON, ET AL             CIVIL ACTION

VERSUS                              NUMBER: 06-3298

SHUAN DONOVAN, ET AL             SECTION: "B"(5)

## ORDER AND REASONS

For the following reasons, Plaintiff's second renewed motion for class certification is **DENIED**.

Before the Court is Plaintiffs' Second Renewed Motion for Class Certification (Rec. Doc. No. 760). The motion is opposed by HUD (Rec. Doc. No. 761) and HANO (Rec. Doc. No. 769). The Court held oral argument, ordered supplemental briefing (*see* Rec. Doc. Nos. 780, 781, 782, and 783), and thereafter took the matter under submission. Reasons for ruling are provided below.

Background:

This case arises from plans by HANO to demolish and redevelop four deteriorated public housing developments: B.W. Cooper, C.J. Peete, St. Bernard, and Lafitte — also known as "the Big Four." The planning of this demolition began prior to Hurricane Katrina but was accelerated after the storm struck due to further damage caused by the storm. HANO obtained approval from HUD and completed the demolition.[1]

---

[1] The Fifth Circuit found the approval of the demolition to have met the requirements set forth in 42 U.S.C. § 1437p. *See*

This Court then issued an Order certifying a class of plaintiffs. After interlocutory review, however, the Fifth Circuit held that the class was improperly certified because Plaintiffs did not plead the certified claims, which relate to Defendants' administration of the voucher program, in their complaint. *See Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 529 (5th Cir. 2008). The case was remanded to this Court for further proceedings, and Plaintiffs amended their complaint. Upon Defendants' motion, the Court then dismissed all of Plaintiffs' claims except for their due process claims as related to the administration of the voucher program.

Plaintiffs re-amended their complaint to reflect their sole surviving claim of due process violation purportedly with respect to the voucher program (*see* Rec. Doc. No. 749 ¶¶ 80-84) and now seek certification of a class of plaintiffs to litigate that claim for relief. Specifically, Plaintiffs' motion urges this Court to certify a class of claimants described as follows: **"Citizens of the United States who resided in public housing developments in New Orleans, Louisiana as of August 29, 2005, and were involuntarily displaced as a result of Defendants' actions following Hurricane**

---

*Anderson v. Jackson*, 556 F.3d 351, 354, 360 (5th Cir. 2009) (affirming this Court's denial of preliminary injunction).

**Katrina."**  (*See* Rec. Doc. No. 760 at 1.)[2]

Law and Analysis:

Plaintiffs bear the burden of establishing that the class they seek to certify meets all requirements under Federal Rule of Civil Procedure 23.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Under Rule 23, Plaintiffs must first satisfy four prerequisites: (1) The class must be so numerous that joinder of all class members would be impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Implicit in these four prerequisites is the requirement that the class be properly defined and identifiable. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).  "A district court certainly may look past the pleadings to determine whether the requirements of rule 23 have been met.  Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in

---

[2] Note that, unlike the second renewed motion to certify the class, Plaintiffs' second amended complaint describes the putative class as: "Citizens of the United States who resided in public housing developments in New Orleans, Louisiana, as of August 29, 2005; were involuntarily displaced as a result of Defendants' actions following Hurricane Katrina; and are entitled to vouchers or other forms of rental assistance from HUD or HANO pursuant to HUD's regulations."  (*See* Rec. Doc. No. 749 ¶ 71.)

order to make a meaningful determination of the certification issues." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996) (footnote and citation omitted).

Once Plaintiffs have shown that all four prerequisites from Rule 23(a) have been met, they must next show that the class action would fit into one of the three categories described in Rule 23(b). Plaintiffs here argue that this case can be maintained as a class action under either Rule 23(b)(2) or 23(b)(3). Rule 23(b)(2) allows a class action to be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Court may still award damages under a Rule 23(b)(2) class action when those damages are incidental to the predominant declaratory or injunctive relief. *See Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 257 (5th Cir. 1974) (awarding damages in the form of back pay in a Rule 23(b)(2) Title VII action). "Incidental" damages are those "that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998). However, liability for damages that are incidental to injunctive or declaratory relief should not require additional hearings to resolve the disparate merits of each individual case and should not entail complex or

individualized determinations. *Id.* For damages to be incidental, they must be capable of computation by way of objective standards and largely independent of subjective differences in each class member's situation. *Id.*

A class action maintained under Rule 23(b)(3), on the other hand, must have "questions of law or fact common to class members [that] predominate over any questions affecting only individual members, and [the] class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## I.  Rule 23(a)(1): Numerosity

To fulfill the numerosity requirement of Rule 23(a), Plaintiffs must demonstrate that joinder of all members of the class is impracticable due to the sheer size of the class or other relevant factors. *See James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981). Although the practicability of joinder generally depends on the number of class members, other factors including geographic dispersion and the difficulty of identifying potential class members are also relevant in determining whether the numerosity requirement is met. *Murillo v. Musegades*, 809 F. Supp. 487, 502 (W.D. Tex. 1992). In *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999), the Fifth Circuit Court of Appeals affirmed the district court's finding of

numerosity when the estimated size of the proposed class was 100 to 150 members. In addition to size, the court also emphasized that the potential geographic dispersion of class members, due to the nature of their employment, supported the lower court's conclusion that joinder would be impracticable. *Id.* In the Seventh, Eighth, and Eleventh Circuits, the numerosity requirement is presumptively fulfilled when the size of the class exceeds forty members. *Chandler v. Southwest Jeep Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D. Ill. 1995); *Caroline C. by & Through Carter v. Johnson*, 174 F.R.D. 452, 463 (D. Neb. 1996); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Plaintiffs here contend that the numerosity requirement is satisfied due to the possibility that "more than 3,000 families who lived in New Orleans public housing as of August 29, 2005 . . . were, are, or will be involuntarily displaced as a result of Defendants' decision to shutter and demolish that housing instead of reopening it, leaving them dependent on vouchers or other inadequate forms of substitute housing benefits from HUD or HANO." (Rec. Doc. No. 760-1 at pg. 18.) Plaintiffs derive the number of more than 3,000 potential class members from Defendants' "plan to demolish 3,948 previously occupied public housing units, and plan to build only 717 public housing units, leaving as many as 3,231 families permanently without a unit after redevelopment, if it takes place as planned." (Rec. Doc. No. 760-1 at pg. 18-19.)

To satisfy the numerosity prong, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038 (5th Cir. 1981).  When conducting a numerosity analysis, district courts must not focus on sheer numbers alone but must instead focus "on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Phillips v. Joint Legislative Comm.,* 637 F.2d 1014, 1022 (5th Cir. 1981). The inclusion of future members in the class definition is a factor to consider in determining if joinder is impracticable. In *Jack v. American Linen Supply Co.*, the court noted that "[t]he alleged class ... include [d] unnamed, unknown future ... [members] who will be affected by ... discriminatory policies, and joinder of unknown individuals is certainly impracticable." 498 F.2d 122, 124 (5th Cir.1974). In the case at hand, the fact that the class includes unknown, unnamed potential members weighs in favor of finding impracticable joinder.

Problematic here, but not insurmountable, is determining which former residents did not return due to personal reasons unrelated to issues in this lawsuit, which and how many displaced residents suffered out-of-pocket utility expenses for the first time and in excess of monthly utility expenses incurred prior to hurricane related displacement, to name a few issues impacting numerosity.

Plaintiffs proposed class description appears vague,

overbroad, and not sufficiently identifiable.  Plaintiffs define the class as those individuals "involuntarily displaced as a result of Defendants' actions . . . ."  Plaintiffs' definition of the putative class presupposes liability on the part of Defendants.  As noted above, Plaintiffs' class definition would require a determination of whether or not and to what extent a former resident's continued displacement is truly "involuntary".  Plaintiffs' class definition would also include individuals who may have been involuntarily displaced but also suffered no damages because they never paid out-of-pocket utility expenses.  Plaintiffs' class is not clearly defined. However, the sheer volume of displaced residents from the developments at issue would, on its face, indicate satisfaction with Rule 23's numerosity requirement, but for the combined effect of other considerations noted above.  The mere possibility that the class of potential plaintiffs might be so large that joinder would be impracticable is not the same as proof of such numerosity.

**II.  Rule 23(a)(2): Commonality**

The second prerequisite of Rule 23(a) provides that representative parties may sue on behalf of a class only if there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This requirement of "commonality" bears a low threshold.  *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993).  A single question of either law or fact that is common

to members of the class is sufficient to fulfill this requirement. *James*, 254 F.3d at 570.

Plaintiffs contend that there are common questions of liability in this case that makes class certification appropriate. Specifically, Plaintiffs contend that the following issues apply to all members of the class: (1) whether Plaintiffs are entitled to housing benefits equivalent to what they paid in their former homes from which they were displaced, (2) whether the housing benefits currently offered by Defendants are equivalent to the housing benefits provided prior to Plaintiffs' displacement, and (3) whether the deprivation of housing benefits occurred without due process of law. Plaintiffs further argue that any individualized determinations as to damages do not defeat the commonality requirement because "[a]ll class members' claims are based on the same formula." (Rec. Doc. No. 760-1 at pg. 21.)

When class treatment was found appropriate for members who were required for the first time to pay utilities, there appeared then to be a determinable group who shared that common fact. Since then, further discovery reveals otherwise (See also discussion of adequacy *infra*). Because of that, any ruling as the liability of HANO or HUD will require individualized fact-based inquiries. The need for individualized inquiry defeats Rule 23's requirement of commonality. In addition, the entitlement to housing benefits depends on the unique circumstances of each individual plaintiff,

including age, income, household size, etc. Plaintiffs have failed to meet their burden of showing commonality under Rule 23.

### III. Rule 23(a)(3): Typicality

The next prerequisite of Rule 23(a) provides that the claims and defenses available to the representatives of the class should be typical of those belonging to the members of the class as a whole. Fed. R. Civ. P. 23(a)(3). The "typicality" prerequisite is intended to ensure that the interests of the named plaintiffs substantially align with those of the absent plaintiffs. 5 James Wm. Moore et al., Moore's Federal Practice § 23.24 (Mathew Bender 3d ed. 2009). The burden of showing typicality is not high or demanding. *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993). Typicality requires that the named plaintiffs advance similar or identical legal and remedial theories as those that would be advanced by the absent members of the class if they were to proceed in a parallel action. *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). Typicality is also fulfilled despite factual differences in individual claims as long as "the claims arise from a similar course of conduct and share the same legal theory." *James*, 254 F.3d at 571.

In this case, all representative plaintiffs with the exception of Judith Watson have advanced identical legal theories: that they were deprived of due process with respect to utility expenses they had to pay out-of-pocket once the voucher program was implemented

following Hurricane Katrina.  Named plaintiff Judith Watson, however, never participated in the voucher program. (*See* Rec. Doc. No. 760-1 at pg. 15.)  As such, because of Plaintiff Watson's lack of participation in the voucher program, the group of representative plaintiffs proposed in the motion for class certification do not meet the typicality requirement of Rule 23(b)(3).

**IV.  Rule 23(a)(4): Adequacy**

The adequacy prerequisite under Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Adequacy is necessary to protect the due process rights of absent class members who are nevertheless bound by the judgment.  5 James Wm. Moore et al., Moore's Federal Practice § 23.25 (Mathew Bender 3d ed. 2009). A representative is inadequate if his or her interests are antagonistic or in conflict with the interests of the absent class members. *Mullen*, 186 F.3d at 625-26.

Plaintiffs contend that their longstanding involvement in this litigation, which has been pending for four years, demonstrates that they will fairly and adequately represent the class.  However, certain named Plaintiffs have made housing selections based on personal considerations unrelated to utilities.  For example, named plaintiff Allen Harris testified in deposition that he made his housing selection based on proximity to a longstanding girlfriend

as well as family members -- considerations wholly unrelated to utility allowances. Similarly, named plaintiff Gloria Williams chose her voucher-funded unit based on the unit's proximity to her sister. As such, because personal considerations have predominated the voucher-related decisions of at least some representative plaintiffs, Plaintiffs have failed to meet their burden of showing that the representative plaintiffs would adequately represent the class.

**V.   Rule 23(b): Types of Class Actions**

Even assuming that Plaintiffs could satisfy the four prerequisites under Rule 23(a), it is clear that the requirements of Rule 23(b) are not met.  First, Plaintiffs fail to fall within the ambit of Rule 23(b)(2) because they seek primarily compensatory rather than injunctive relief.  Although Plaintiffs have construed the relief sought in their complaint as injunctive and declaratory, what they really seek is payment by Defendants of out-of-pocket expenses incurred for Plaintiffs' utility usage.  Furthermore, as discussed previously, these damages cannot be calculated using an objective standard; rather, the Court would have to examine the individual circumstances of each plaintiff to determine how much of a monetary award each plaintiff was entitled to.  While "incidental" damages may be awarded under Rule 23(b)(2) when they "flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief,"

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998), such incidental damages should not require additional hearings to resolve the disparate merits of each individual case and should not entail complex or individualized determinations. *Id.* For damages to be incidental, they must be capable of computation by way of objective standards and largely independent of subjective differences in each class member's situation. *Id.* The damages sought by Plaintiffs here clearly do not fall within the definition of incidental damages because of the highly fact-based and individualized inquiries that would have to occur prior to arriving at a fair damages calculation for each plaintiff. As such, this action does not fall within the scope of Rule 23(b)(2) as Plaintiffs argue.

For similar reasons, this action fails to fall within the scope of Rule 23(b)(3) as well because the predominance and superiority requirements are not satisfied. Questions of law or fact do not predominate over the class as a whole; rather, the Court would have to perform an individualized inquiry to determine whether each plaintiff was entitled to relief from Defendants. Because proof of damages is so highly fact-intensive among the proposed class of plaintiffs due to their varied individual circumstances with regard to post-Katrina housing assistance, a class action would not be the superior method of adjudicating the claims here.

In sum, the class sought to be certified by Plaintiffs here is too individualized with nebulous theories of class-wide commonalities pertaining to affordable housing. Arguably, Plaintiffs could have sought, as the Court suggested, certification of a more distinct and narrow class for denied utility benefits, e.g., citizens of the United States who resided in New Orleans public housing as of August 29, 2005, who were involuntarily displaced as a result of Defendants' actions and who subsequently were deprived of utility benefits, which they received prior to August 29, 2005 and are no longer receiving but entitled to receive but for a denial of due process rights. However, there is no identifiable and adequate representative for that putative class; also absent in that regards is sufficient proof, direct or circumstantial, that such a class would favorably satisfy Rule 23 analysis.

New Orleans, Louisiana, this 28th day of February, 2011.

_____
UNITED STATES DISTRICT JUDGE